IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-cv-298-MR-WCM

| | | |
|---|---|---|
| THE RESIDENCES AT BILTMORE CONDOMINIUM OWNERS' ASSOCIATION, INC., | ) ) ) ) | MEMORANDUM AND RECOMMENDATION |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| OWNERS INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

This matter is before the Court on a Motion to Dismiss (Doc. 5), which has been referred to the undersigned for the entry of a recommendation, pursuant to 28 U.S.C. § 636.

## I. Relevant Procedural Background

On July 25, 2025, The Residences at Biltmore Condominium Owners' Association, Inc. ("Plaintiff") filed its Complaint against Owners Insurance Company ("Defendant") in the Superior Court of Buncombe County, North Carolina. Doc. 1-1.

On September 2, 2025, Defendant removed the case. Doc. 1.

On October 3, 2025, Defendant filed the Motion to Dismiss. Docs. 5, 6. Defendant also filed an Answer. Doc. 7.

On October 17, 2025, Plaintiff responded to the Motion to Dismiss. Doc.

1

8.

Defendant has not filed a reply and the time to do so has passed.

## II.    Plaintiff's Allegations

Plaintiff is a condominium association that administers property which consists of four buildings of residential condominium units in Asheville, North Carolina (the "Property"). Doc. 1-1 at ¶ 2. The buildings were converted from residential apartments to condominiums in 2005. Id. at ¶ 3.

Plaintiff purchased a commercial property insurance policy (the "Policy") that was issued by Defendant and that covered the Property. Id. at ¶¶ 5-7, 9.

On July 28, 2022, a fire occurred in Building 4. Id. at ¶ 8.

On August 23, 2022, Defendant's third-party appraiser, Barker Claim Services ("Barker"), issued an initial appraisal of the replacement cost value for the repairs to Building 4. Id. at ¶ 15.

On November 14, 2022, Defendant made an initial payment of $87,536.30. Id. at ¶ 16.

On January 17, 2023, Barker, on behalf of Defendant, issued a second appraisal. Id. at ¶ 17.

Plaintiff's contractor, JL Design Builders & Renovations, Inc. ("JL Design"), began working with the City of Asheville (the "City") to obtain the required building permits for the repairs. Id. at ¶ 18. JL Design was told that it would need to engage an architect to prepare plans to ensure that the

2

damaged units were repaired in accordance with the building codes that were in effect in 2005, when the units were converted to condominiums. Id. at ¶¶ 18-19. Plaintiff did so and engaged an architectural firm to prepare the building plans using the 2000 International Building Code with 2002 updates. The City approved the building plans and issued a building permit (the "Building Permit") on April 14, 2023. Id. at ¶¶ 21-24.

JL Design and its subcontractors began performing the repairs in accordance with the plans and the Building Permit. Id. at ¶¶ 26-27.

On June 1, 2023, Barker, on behalf of Defendant, issued a third appraisal. Id. at ¶ 28.

On or about February 13, 2024, the repairs were completed. Id. at ¶ 29.

Two days later, on February 15, 2024, Barker, on behalf of Defendant, issued a fourth appraisal. Id. at ¶ 30.

Subsequently, Barker, on behalf of Defendant, issued a final appraisal by which it revised the total replacement cost value to $215,365.74. Id. at ¶ 31.

On August 21, 2024, Defendant made a second payment, which Defendant indicated was the "final payment" owed pursuant to the Policy, in the amount of $102,829.44. Id. at ¶¶ 37-38.

Plaintiff has not cashed or deposited the second payment and contends that Barker's final appraisal failed to value accurately the losses Plaintiff incurred. Id. at ¶¶ 39-42. Specifically, Plaintiff contends that repairing the

Property as required by the City cost a total of $271,905.47, id. at ¶¶ 39, 32-33, and that Defendant's lower appraised value does not reflect the City's requirement that the repairs be made in compliance with the building code that was in effect when the Property was converted to condominiums. Id. at ¶ 43. In that regard, Plaintiff contends that Barker "repeatedly stated that the City did not require [Plaintiff] to perform certain repairs" despite the Building Permit explicitly requiring those repairs and that Plaintiff "repeatedly submitted additional documentation, such as the Construction Plans and the Building Permit, evidencing that certain portions of the Total Loss Amount resulted from the City's enforcement of the minimum requirements of its laws and ordinances with respect to the repair of the Damaged Units." Id. at ¶¶ 35-36, 43.

In addition to claims for declaratory judgment and breach of contract, Plaintiff asserts a claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq. ("Chapter 75"). Doc. 1-1. The Motion to Dismiss challenges only the Chapter 75 claim.

### III.  Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." Francis v.

Giacomelli, 588 F.3d 186, 189, 192 (4th Cir. 2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

IV. Discussion

To state a Chapter 75 claim, a plaintiff must allege: "(1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximately causes actual injury to the plaintiff or his business." Suntrust Bank v. Bryant/Sutphin Props., LLC, 222 N.C. App. 821, 826 (2012), disc. review denied, 366 N.C. 417 (2012) (citing N.C. Gen. Stat. §

5

75-1.1(a); <u>RD&J Props. v. Lauralea-Dilton Enters., LLC</u>, 165 N.C. App. 737, 748 (2004)). Conduct that violates North Carolina's "Unfair Claim Settlement Practices" statute, N.C. Gen. Stat. § 58-63-15(11), which "defines unfair practices in the settlement of insurance claims," "constitutes a violation of [Chapter 75] as a matter of law." <u>Elliott v. Am. States Ins. Co.</u>, 883 F.3d 384, 396 (4th Cir. 2018); <u>see also</u> <u>DENC, LLC v. Philadelphia Indem. Ins. Co.</u>, 32 F.4th 38, 50, n.4 (4th Cir. 2022) (citing <u>Elliott</u>, 883 F.3d at 396).

Pursuant to the Unfair Claim Settlement Practices statute, certain acts, when committed or performed "with such frequency as to indicate a general business practice," are considered to be "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance." Here, Plaintiff argues that Defendant's actions violated subsections (d), (h), and (n), Doc. 8 at 7; Doc. 1-1 at ¶¶ 65-68, which prohibit:

> d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> ***
>
> h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;
>
> ***
>
> n. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

6

N.C. Gen. Stat. § 58-63-15(11).

In general, Defendant responds that it reasonably investigated Plaintiff's claims, and that Plaintiff's Complaint "outlines a simple disagreement between the parties as to the amount that is owed." Doc. 6 at 5.

The undersigned, though, does not find Defendant's argument to be persuasive.

In its Complaint, Plaintiff alleges that it "repeatedly submitted documentation" substantiating the amount owed, including invoices, construction documents, and the Building Permits. Doc. 1-1 at ¶ 61. Plaintiff further alleges that it "repeatedly informed" Defendant and Barker that the City required Plaintiff to make the repairs as described in the construction drawings but that Barker continued to dispute the requirement, as set forth in the Building Permit, that the repairs be completed in accordance with the building code that was in effect when the Property was converted to condominiums. Id. at ¶¶ 62-63.

Plaintiff's Complaint, taken as a whole and in the light most favorable to Plaintiff, plausibly alleges more than a simple claim denial or disagreement as to the amount owed. Cf. Hancox v. State Farm Mutual Auto. Ins. Co., 642 F. Supp.3d 514, 523 (E.D.N.C. 2022) (granting a motion to dismiss where the complaint made only conclusory allegations and "[a]t most, plaintiff has alleged that State Farm has denied coverage to which plaintiff was entitled.

7

Simple claim denial is not listed as an example of inherently unfair insurance trade practices under § 58-63-15(11), nor does it 'involve some type of egregious or aggravating circumstance sufficient to violate' [the UDTPA]") (citing <u>ABT Building Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 472 F.3d 99, 123 (4th Cir. 2006)) (cleaned up); <u>Labudde v. Phoenix Ins. Co.</u>, No. 7:21-CV-197-FL, 2022 WL 2651846, at *9 (E.D.N.C. July 8, 2022) ("The complaint does not allege facts giving rise to a reasonable inference that Vertex Engineering was 'incompetent or untrustworthy,' that the report it produced was 'unscrupulous [ ]or unethical,' or that, in relation to section 58-63-15(11)(d) covered conduct, defendant otherwise engaged in the 'type of aggravated conduct and bad faith' required for such a claim.") (internal citations omitted); <u>see also</u> <u>Currie v. Phoenix Ins. Co.</u>, No. 3:13-cv-00366-MOC-DSC, 2014 WL 320373, at *9 (W.D.N.C. Jan. 29, 2014) (granting a motion to dismiss where the plaintiff's complaint made only conclusory allegations "that the defendant ignored pertinent information and failed to conduct a reasonable investigation") (citing <u>Alqolaq v. State Farm Fire and Cas. Co.</u>, No. 3:11CV16-RJC-DSC, 2011 WL 1831570, at *1, 3 (W.D.N.C. Apr. 7, 2011), <u>memorandum and recommendation adopted</u>, 2011 WL 1812203 (W.D.N.C. May 12, 2011)).

Further, Plaintiff's Complaint indicates that Defendant attempted to settle Plaintiff's claim for a total of $215,365.74, but that Plaintiff's total loss was $271,905.17 based on the cost of certain repairs required by the City. Doc.

1-1 at ¶¶ 16, 37, 40, 33. There is nothing in the Complaint to indicate that Defendant provided an explanation for its position that "the City did not require [Plaintiff] to perform certain repairs in the Construction Drawings," including repairs required by the applicable building codes. <u>Id</u>. at ¶¶ 35-36. <u>See</u> e.g. <u>Gandecha v. Metropolitan Prop. and Cas. Ins. Co.</u>, No. 5:13-CV-688-F, 2014 WL 4243797, at *4 (E.D.N.C. Aug. 26, 2014) (denying a motion to dismiss where the complaint alleged the defendant refused to replace a roof despite the evidence justifying its replacement and that the defendant articulated no basis on which it could have relied to deny the full payment of the claim); <u>cf. Clear Creek Landing Home Owners' Ass'n, Inc. v. Travelers Indemnity Co. of Conn.</u>, No. 1:12cv157, 2012 WL 6641901, at *4 (W.D.N.C. Dec. 20, 2012) (finding that the plaintiff did not state a claim for violation of Section 58-63-15(11)(f) – which prohibits an insurer from "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" – where, among other things, the Defendant "provided Plaintiff with a rationale for why it was not covering the entire replacement costs for the roof").

## V.    Recommendation

Accordingly, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dismiss (Doc. 5) be **DENIED**.

Signed: July 1, 2026

W. Carleton Metcalf
United States Magistrate Judge

## <u>Time for Objections</u>

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within fourteen (14) days of service of same.  Responses to the objections must be filed within fourteen (14) days of service of the objections.  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).